IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RASHAD RICHMOND,

        Plaintiff,

v.

CHAD RUTHERFORD, AUSTIN
THOMPSON, and DAKOTA
HANNAH,

        Defendants.

Case No. 3:19-CV-1097-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Chad Rutherford, Austin Thompson, and Dakota Hannah (Doc. 57). Plaintiff Richmond filed a timely response (Doc. 60), where he fully incorporated his prior motion for summary judgment (Doc. 41) as his argument in opposition. For the reasons set forth below, Defendants' motion is granted.

### INTRODUCTION

On October 4, 2019, Plaintiff Rashad Richmond, formerly a prisoner in the custody of the Illinois Department of Corrections ("IDOC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). Richmond currently resides at DeKalb County Jail, but his allegations concern an incident during his incarceration at Lawrence (Doc. 1; 15). This action proceeds on two counts: one for retaliation in violation of the First Amendment and one for cruel and unusual punishment under the Eighth

Amendment (Doc. 17). Richmond alleges that Defendants held him captive in the shower for six hours in retaliation for a Prison Rape Elimination Act ("PREA") report that Richmond filed against Rutherford and for Richmond's involvement in a staff assault incident weeks prior (Doc. 1). Defendants also purportedly denied Richmond access to his pain medication (*Id.*).

At the time of the underlying events, Defendants worked at Lawrence as correctional officers (Docs. 58-5; 58-6; 58-7). In their motion for summary judgment, Defendants argue that Richmond has not set forth any evidence demonstrating retaliation or that they subjected him to an extreme deprivation (Doc. 58). Moreover, Defendants assert that they were not deliberately indifferent to an excessive risk to Richmond's health or safety (*Id.*). Thompson and Hannah contend that they had no personal involvement in the incident (*Id.*). Defendants also assert qualified immunity as a defense (*Id.*).

## FACTUAL BACKGROUND

The following facts are undisputed for purposes of summary judgment and are construed in a light most favorable to the nonmovant, Richmond.[1]

After a two-week stint in crisis watch, Richmond arrived at his cell in Lawrence's Segregation B Wing at approximately 1:00 p.m. on July 23, 2019 (Docs. 1, 58, 58-4). He noticed that his cell lacked a mattress and a bed roll, which he immediately brought to the attention of first shift (officers working from 7:00 a.m. to 3:00 p.m.) to no avail (Docs. 58;

---

[1] Instead of filing a traditional response, Richmond filed a notice stating that he incorporated his prior motion for summary judgment as his response to Defendants' motion (Doc. 60). As such, he did not respond directly to Defendants' version of the undisputed material facts. The facts, however, primarily stem from Richmond's deposition testimony.

58-1, p. 25). At the beginning of second shift (3:00 p.m. to 11:00 p.m.), Rutherford, an officer assigned to Segregation B Wing, arrived at Richmond's cell (Doc. 58-1, p. 25). During this time, Richmond alerted Rutherford about his need for a bedroll and mattress (*Id.*). Rutherford placed Richmond in restraints and escorted him to the shower (Docs. 58; 58-1, pp. 25-27; 58-2, p. 2).

Generally, the shower area in Lawrence's segregation unit is comprised of multiple standing shower cells (Doc. 58-1, pp. 28-29). Richmond described the cells as a bit smaller than a parking space (*Id.*). Each cell has walls to the ceiling on either side, a door that locks, bars on the top, a solid pane at the bottom, and a "chuckhole" to allow prison personnel to apply or remove handcuffs (*Id.* at pp. 28-32). The space in each shower cell is cramped with no bench or ledge for sitting (*Id.* at pp. 28-30). Richmond also testified that the segregation shower area is "loud as hell" (*Id.* at p. 39).

After being placed in a secluded, corner cell, Richmond took a shower, shut off the water, and put on his clothes (*Id.* at pp. 31, 38, 39). At this point, Rutherford returned to the shower but did not allow Richmond to exit the shower (*Id.* at pp. 32-33, 36). While in the shower, Richmond renewed his request for a bedroll with Rutherford stating that he just arrived in the unit and wanted to sleep (*Id.* at p. 36). According to Richmond, Rutherford cussed at him and told him to sleep in the shower (Docs. 1, p. 18; 58-1, pp. 36-37). After Rutherford walked away, Lieutenant Dixon, no longer a party to this action, came into the shower area and signed a logbook (Docs. 1, p. 18; 58-1, p. 33). Richmond pleaded with Dixon to get a bed roll and mattress, but Dixon walked away without response (Doc. 1, p. 18).

While locked in the shower cell, Richmond observed Rutherford passing through the area to escort other prisoners for their showers and signing a logbook each time (Doc. 1, p. 19; 58-1, pp. 33, 43). Each time he passed through, Richmond begged to be let out of the shower (Doc. 58-1, pp. 40, 43). Richmond also noticed that Defendants Thompson and Hannah entered the area to help escort others to their showers (Docs. 1, p. 18; 58-1, pp. 33, 36). Richmond believes that he implored Defendants Thompson and Hannah to release him from the shower on multiple occasions (Doc. 58-1, p. 33). According to Richmond, neither officer responded to him (*Id.* at p. 40). Hannah was assigned as the video visit officer during this shift (Doc. 58-2, p. 2). According to Hannah, he only went to the segregation area during his lunch hour to heat his dinner (Doc. 58-6). Thompson was assigned to Segregation A Wing, opposite of Richmond's wing (Doc. 58-2, p. 2). According to Thompson, he only helped in the B Wing shower area for approximately 30 minutes (Doc. 58-7).

In his affidavit, Richmond stated that he could see the "bubble," a control area where correctional officers sit, from the shower (Docs. 1, p. 18; 58-1, p. 39). Richmond watched Defendants play cards, eat dinner, smile, and laugh at him in an attempt to depreciate and humiliate him (Docs. 1, p. 18; 58-1, pp. 44-45). As hours passed, Richmond remained standing in the shower cell (Docs. 1, p. 20; 58-1, p. 40). A nurse made rounds to distribute medications, and Richmond testified that he heard someone tell the nurse to withhold his pain medication (Doc. 58-1, pp. 46-47). He could not identify who gave the nurse this command (*Id.*).

Richmond broke his back and leg years earlier in a car accident which caused lasting, chronic pain (Doc. 1, p. 20). As a result of the injuries, he has hardware in one leg (Docs. 1, p. 20; 58-1, p. 54). Richmond alleges that the officers knew of his medical issues and that he had difficulty standing for a long period of time (Doc. 1, p. 20). After being subjected to prolonged standing over the course of several hours, he experienced knee and leg pain along with swelling (Doc. 58-1, p. 54).

Finally, Rutherford came to escort Richmond back to his cell (Docs. 1, p. 19; 58-1, pp. 47-48). Richmond could barely walk and limped back to his cell (Doc. 1, p. 20). According to Richmond, he returned to his cell at the beginning of third shift, around 9:00 p.m. (Docs. 1, p. 20; 58-1, pp. 47-48). An incident report from that evening, however, indicates that Richmond returned to his cell at 7:55 p.m. (Doc. 58-4). Richmond asked Rutherford why he was locked in the shower for several hours (Docs. 1, p. 19; 58-1, pp. 48-49). Rutherford explained that he did so because of the PREA report that Richmond filed against him and a staff assault incident two weeks prior[2] (Docs. 1, p. 20; 58-1, pp. 48-49). Essentially, Rutherford retaliated (*Id.*). Richmond does not recall ever filing a PREA complaint against Rutherford (Doc. 58-1, p. 49).

Upon arrival at his cell, Richmond again requested a bedroll, mattress, and dinner (Docs. 1, p. 20; 58-1, p. 50). Rutherford passed responsibility for "third shift [to] figure it out[.]" (*Id.*). Richmond reacted by snatching his handcuffs before they were fully

---

[2] According to Richmond, Rutherford mentioned that the shower incident was in retaliation for involvement in a staff assault incident two weeks prior. But the Court dismissed this portion of the claim on preliminary review because Richmond did not allege that he engaged in constitutionally protected activity as to the staff assault (Doc. 17, p. 4).

removed (*Id.*). He refused to return them until he could speak with someone in higher command (Docs. 1, p. 21; 58-1, pp. 51-52). Sergeant Anthony Senn, Lieutenant Dixon, and Major Whelan, all non-parties, arrived on the scene (*Id.*). Major Whelan accommodated Richmond with pain medication, a mattress, bedroll, and dinner, and Richmond returned the handcuffs (Doc. 58-1, p. 52). Richmond transferred to Hill Correctional Center ("Hill") the following morning (Doc. 58-3, p. 3).

According to Rutherford, Hannah, and an incident report from that evening, Richmond refused to be handcuffed to get out of the shower (Docs. 58-4; 58-5). But Richmond testified that he never refused (Doc. 58-1, pp. 37, 41).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322-24. A moving party is entitled to judgment as a matter of law where

the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. The party opposing summary judgment must offer admissible evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## DISCUSSION

### I.   First Amendment Retaliation

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See Manuel v. Nalley,* 966 F.3d 678, 680 (7th Cir. 2020); *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). To substantiate a First Amendment retaliation claim, a prisoner must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants'

decision to take the retaliatory action." *Douglas v. Reeves,* 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009)); *see also Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). Once the plaintiff establishes a prima facie case, "the burden shifts to the defendant to rebut the claim, that the activity would have occurred regardless of the protected activity." *Manuel,* 966 F.3d at 680.

Here, Richmond fails as to the first prong. He has not offered evidence sufficient to allow a reasonable jury to conclude that he engaged in protected First Amendment activity. Richmond testified that he does not recall ever submitting a PREA report against Rutherford. Even though Rutherford purportedly described the PREA report as his motivation for abandoning Richmond in the showers, there is no evidence of any such report in the record. Thus, Richmond has not shown that he engaged in protected First Amendment activity, and Defendants are entitled to summary judgment on Richmond's retaliation claim.

## II.  Eighth Amendment Cruel and Unusual Punishment

"Pursuant to 42 U.S.C. § 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). The Eighth Amendment prohibits cruel and unusual punishments that involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). This prohibition extends to acts "totally without penological justification." *Id*. In reviewing Eighth Amendment claims, courts must conduct both an objective and a subjective inquiry. *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir. 2004).

The Court must first evaluate whether the alleged deprivation is "sufficiently serious" so that "a prison official's act or omission results in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). "[T]he harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety[.]" *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Merely unpleasant conditions do not satisfy the objective component. *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 676 (N.D. Ill. 2009).

Second, to satisfy the subjective element, a prison official must be "deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins*, 462 F.3d at 760. A prison official is deliberately indifferent if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Whitman*, 368 F.3d at 934 (quoting *Farmer*, 511 U.S. at 847).

A prisoner's Eighth Amendment rights may also be violated when prison officials act in a harassing manner intended to humiliate and cause psychological pain. *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009). Such unnecessary and wanton infliction of pain is unconstitutional when it is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)). For an Eighth Amendment claim based on harassment, the objective element requires a prison official's

harassing behavior to approach the level of presenting a genuine threat to the prisoner. *Parrilla v. Beahm*, No. 17-C-841, 2018 WL 3717026, at *4 (E.D. Wis. Aug. 3, 2018).

### a. Objective Prong

The facts, construed in favor of Richmond, demonstrate that Rutherford locked Richmond in a secluded shower cell for several hours. Taking Richmond's version of events as true, he stood in the shower for six hours from approximately 3:00 p.m. to 9:00 p.m. repeatedly asking Defendants to be released. While in the shower, Richmond remained fully clothed without handcuffs or restraints. The shower cell offered no place to sit other than the floor. When a nurse came to the shower area to distribute medication, Richmond recalls hearing someone tell her to withhold his medication. Rutherford eventually escorted Richmond to his cell. In explaining his motivation for leaving Richmond in the shower, Rutherford said he retaliated for a PREA report and a prior staff assault incident. Back at his cell, Richmond took his restraints hostage until he received a bedroll, mattress, dinner tray, and his medications from Major Whelan.

Richmond's Eighth Amendment count stands on two premises that: (1) Defendants denied him pain medication by instructing the nurse to withhold his medication constituting a deprivation of the minimal civilized measure of life's necessities, and (2) Defendants knew it was difficult for Richmond to stand for long periods of time due to his injuries, but left him in the shower while they carried on in folly to humiliate him. On this record, even construing the facts in favor of Richmond, the Court finds that the alleged deprivation is not an objective, sufficiently serious one rising to the level of an Eighth Amendment violation.

As prison officials, Rutherford, Thompson, and Hannah must take reasonable measures to ensure Richmond received appropriate medical care. Denying Richmond his pain medication could rise to a level of an Eighth Amendment violation. Richmond testified that he heard someone tell the nurse to withhold his medication, but he could not identify who did so. No reasonable juror could decide, based on this testimony, that Defendant Rutherford, Thompson, or Hannah issued such a command. Further, even if Richmond could identify which officer, if any, attempted to deny him access to his pain medication, this was a one-time incident. Hours later, Richmond received his necessary medication. This one-time deprivation of pain medication, even if supported by the record, does not cross the line into an Eighth Amendment violation.

Richmond also states that forcing him to stand for several hours, in and of itself, amounted to a serious deprivation. He contends that he had no access to a chair or a way to sit for several hours. Defendants argue that Richmond had the opportunity to sit on the floor. The Court tends to agree with Richmond, though, that the prison's shower floor did not provide a decent option for sitting.[3] A short-term deprivation, however, does not ordinarily amount to a constitutional violation. *See Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988); *see also Hernandez,* 673 F. Supp. 2d at 677-78 (finding that handcuffing prisoners behind their backs for eight to nine hours and exposing them to extreme temperatures for three to five hours did not amount to an Eighth Amendment violation); *see also Evans v. Dorn,* No. 17-C-1435, 2019 WL 2579444, at *3 (E.D. Wis. June 24, 2019)

---

[3] When asked if he was able to sit on the floor in the shower, Richmond testified, "Yes, if you're trifling enough to sit on the floor then suit yourself, but I didn't." (Doc. 58-1, p. 30).

(holding that prison official's action in shackling plaintiff to a table and locking him in a cold room for several hours did not rise to a constitutional violation). While certainly unpleasant, the conditions Richmond endured were temporary and not sufficiently severe to implicate the Eighth Amendment.

Richmond also states in his complaint and affidavit that the officers played cards, ate dinner, smiled, and laughed at him while he stood in the shower cell. He surmised that the officers acted this way to humiliate and demean him because they knew of his painful medical ailments and difficulty standing. Typically, humiliation and harassment claims under the Eighth Amendment arise in the context of strip searches or inappropriate sexual conduct. That is not to say these claims are limited to those contexts. But it is worth highlighting that those typical situations involve much more intimate and vulnerable conditions than Richmond describes. *See Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *see also Whitman*, 368 F.3d at 934-36.

Here, aside from conclusory and speculative statements in his complaint and accompanying affidavit, Richmond does not offer any evidence that Defendants sought to humiliate him. He did not testify about any conduct other than normal breakroom behavior like playing cards, eating, and laughing. Richmond remained fully clothed and uncuffed in the shower cell. He was not displayed in front of other prisoners as he testified that he was secluded in a corner. His suspicions alone do not create a genuine issue of material fact. Based on this record, Richmond's situation does not rise to the level of an Eighth Amendment violation based on harassment and humiliation.

Richmond also alleges that Defendants harassed him knowing his particular vulnerability due to his leg and back injuries. Typically, this argument arises in cases involving sexual assault or vulnerability to suicide. *See Lisle v. Welborn*, 933 F.3d 705, 718-19 (7th Cir. 2019) (reversing summary judgment where defendant knew of a prisoner's deteriorating mental health and particular vulnerability to self-harm but taunted him and encouraged him to take his own life); *see also Beal v. Foster*, 803 F.3d 356, (7th Cir. 2015) (reasoning that taunting behavior paired with public, homophobic innuendos could violate the Eighth Amendment by inflicting significant psychological harm on an inmate who feared an increased risk of sexual assault by other inmates).

Here, first and foremost, the record is devoid of any evidence that Defendants knew of Richmond's medical issues. He simply asserts in his affidavit that they knew of his medical conditions. There is no testimony that Richmond told Defendants about his pain or medical condition, only that he asked to be released from the shower cell. Perhaps an inference could be made that Defendants became aware of Richmond's medical issues when the nurse came around to administer medications to the prisoners. This is a stretch, however, because Richmond does not know who spoke with the nurse, and there is no evidence that the nurse disclosed Richmond's medication or condition to anyone. Again, the record fails to support the contention that Defendants knew of his medical condition and exploited his vulnerabilities in an attempt to humiliate or harass him. Further, while Richmond says he could barely walk and his legs were swollen, he admits that his symptoms resolved quickly and did not create any lasting impact. While lockdown in a shower cell for several hours was undoubtedly unpleasant and caused substantial

discomfort, the Court cannot find that these circumstances were objectively, sufficiently serious as to implicate the Eighth Amendment. As such, Defendants are entitled to summary judgment on Richmond's Eighth Amendment claim.

### b. Subjective Prong

Even if the alleged conditions should qualify as objectively serious, Richmond has failed to prove that Defendants had the requisite mindset, that is, deliberate indifference.

Turning first to Defendants Thompson and Hannah, each occupied the shower area for a relatively short period of time. Thompson, assigned to the opposite segregation wing, only helped in the shower area for 30 minutes moving in and out to escort other prisoners. Hannah, assigned to the video visit post, only went to the segregation area during his lunch hour. Neither Thompson nor Hannah locked Richmond in the shower. Richmond recalls asking Thompson and Hannah on multiple occasions to let him out of the shower cell and that each ignored his complaints.

As discussed above, Richmond simply stated in his complaint and affidavit that Defendants knew of his medical issues. The record does not contain any support for this contention. Richmond only testified to asking Defendants to release him from the shower. He does not assert that he complained to any officer about his severe discomfort and medical issues, or that they had known about his medical conditions from prior interactions.

There is also insufficient evidence in the record to show that Thompson or Hannah knew how long Richmond had been in the shower. Moreover, Richmond testified that the showers in segregation are very loud. Considering the short time each defendant

spent in the area, the noisy environment, and their preoccupation with escorting other prisoners in and out of the showers, the Court finds that Richmond has failed to provide evidence that Thompson or Hannah knew of and disregarded an excessive risk to his health or safety. To the extent Richmond argues Hannah and Thompson failed to intervene, he must similarly show that he faced a substantial risk of serious harm, and that Defendants knew of and disregarded that risk. *See Wilson v. Ryker,* 451 F. App'x 588, 589 (7th Cir. 2011). As discussed, there is no evidence in the record to support this finding.

Pivoting to Rutherford, he placed Richmond in the shower cell, initially refused to let him out, and escorted Richmond to and from his cell. Rutherford was present throughout the entire incident, even though he also escorted other prisoners to and from the showers during the same time. Apparently, Rutherford intentionally left Richmond in the shower in retaliation for a PREA report and staff assault incident. There is no question that Rutherford knew how long Richmond had been standing in the shower. Even so, no evidence exists in the record to show that he knew of Richmond's underlying medical condition that made standing difficult or that, generally, standing for up to six hours posed a substantial risk to Richmond's health or safety. Richmond's bare assertion that Rutherford knew of his medical condition, without more, does not create a genuine issue of material fact as to this point.

The Court cannot find, on this record, that Defendants knew of a substantial risk of serious harm to Richmond and subsequently disregarded that risk. So even if the deprivation objectively amounted to a sufficiently serious one, Rutherford, Thompson,

and Hannah are still entitled to summary judgment as Richmond failed to support the subjective prong of his Eighth Amendment claim as well.

## CONCLUSION

For these reasons, the motion for summary judgment filed by Defendants Chad Rutherford, Austin Thompson, and Dakota Hannah (Doc. 57) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED: September 19, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**